LOTTINGER, Judge.
Plaintiff, an inmate at Louisiana State Penitentiary at Angola, seeks damages from the State of Louisiana through the Department of Corrections for inadequate medical treatment which he alleges eventually led to amputation of the lower half of his right leg. Plaintiff also sues for damages allegedly caused when he was stabbed by a security officer at the prison hospital following the amputation.
The defendants are the State through the Department of Corrections; Elayn Hunt', individually and as director of the Department of Corrections; Murray Henderson, individually and as chief warden of the state penitentiary at Angola; Dr. Harry Katz, the physician at Angola who originally treated plaintiff upon his entrance into the prison; one security officer Juneau, who allegedly stabbed plaintiff; and two other defendants who are not pertinent to the issues presented on this appeal.
The trial judge awarded plaintiff $2,000.00 for the stab wound incurred when security officer Juneau stabbed the plaintiff at the prison hospital. However, the trial judge refused to award plaintiff any monetary damages for inadequate medical care because the trial judge found, after hearing the testimony of Dr. Chris Cenac (who performed the amputation), that the amputation should have occurred regardless of the treatment given to the plaintiff at Angola.
Plaintiff was admitted to Angola on May 10,1974, after serving a part of his sentence at the parish prison in Orleans Parish. Somewhere in the mid to late 60’s, prior to his entrance into the prison system of this state, plaintiff was the victim of a stab wound to the lower spinal area, which resulted in plaintiff losing much of the sensation in his right leg. The nature of the stab wound was such that plaintiff had to constantly be on guard for development of trophic ulcers on his right leg and foot. In fact, prior to his entry to Angola, plaintiff had to have his right toe amputated because of the nerve damage that occurred as a result of the stabbing incident.
The testimony indicates that plaintiff developed a trophic ulcer at parish prison in Orleans but that the ulcer had healed to some extent immediately prior to his entry into Angola. When he arrived at Angola, he immediately requested medical attention but was not seen by a doctor until two days later. The plaintiff claims that Dr. Katz, the doctor who saw him at Angola, refused to administer antibiotics for the ulcer and that Dr. Katz’s refusal to do so was what eventually led to the amputation. Dr. Katz testified that, in his professional judgment, the administration of antibiotics to plaintiff was not necessary at the time he saw plaintiff initially. Dr. Katz referred the plaintiff to the general surgeons at Angola, who a few days later referred plaintiff to the orthopedic surgeon. The ulcer grew progressively worse and on May 30,1974, twenty days after his admission to Angola, plaintiff was admitted to Earl K. Long Hospital in Baton Rouge. He was placed under supervision at Earl K. Long for a couple of weeks while various tests were conducted and antibiotics were administered. On June 21, 1974, upon the strong recommendation of Dr. Cenac and other physicians at Earl K. Long, plaintiff agreed to have his leg amputated and the amputation was performed. This suit eventually followed.
The standard of care administered to plaintiff at Angola would have been a major factor in this case had it not been for the testimony of Dr. Cenac, whose deposition was taken after the trial. Dr. Cenac testified in unequivocal terms that the treatment or lack of treatment at Angola had nothing to do with his recommendation to amputate the plaintiff’s leg below the knee. Dr. Cenac testified that the main reason the plaintiff’s lower leg was removed was because of the stab wound, in the late ’60’s, that lacerated the plaintiff’s sciatic nerve. He said that the fastest, most economical, most successful and most rapid return to a normal function in this type of patient was a below-the-knee amputation and a prosthesis. “That decision was made by me and would be made by any orthopedic surgeon trained in prosthetics,” Dr. Cenac testified. “If I would have seen this individual at Charity Hospital in New *1289 Orleans before he got to Angola, I would have recommended amputation. I am surprised that he got this far.” Dr. Cenac said he would have recommended an amputation whether it was 1972 or 1974, based upon the past medical history of the plaintiff and based upon the doctor’s medical training.
The testimony of Dr. Cenac erases any causative connective between the treatment at Angola and the amputation- at Earl K. Long Hospital. Even if we were to find that the treatment at Angola was below the standard of care required of the state at the prison institution, we cannot award the plaintiff the damages he seeks in this case. This is so because the treatment at Angola was not the cause in fact of the amputation of plaintiff’s lower right leg. We are of the opinion the trial judge reached the correct decision in this matter.
As to the stab wound at the hands of a prison guard, the trial judge was manifestly correct in awarding plaintiff $2,000.00 for this injury. The uncontradict-ed testimony of plaintiff and other witnesses shows that the guard, without provocation, stabbed the plaintiff in the leg when the plaintiff refused to give him a cigarette.
Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed at plaintiff-appellant’s costs.
AFFIRMED.